IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CT-03232-M

| | |
|---|---|
| CURTIS RAY GATES, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| LT. HACKNEY, SGT. STRICKLAND, ) | |
| SGT. NOBLES, ) | |
| ) | |
| Defendants.[1] ) | |

This cause is before the court on defendants' pending motion for summary judgment. Mot. [D.E. 68]. Plaintiff responded on opposition. Pl. Verified Resp. [D.E. 82]. For the reasons discussed below, the motion is granted in part and denied in part.

Procedural History:

On July 21, 2020, Curtis Ray Gates, Jr. ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* an unverified complaint under 42 U.S.C. § 1983. [D.E. 1, 4, 8].

Plaintiff names as defendants Officer Davis, Lt. Hackney, Sgt. Strickland, and Sgt. Nobles, and generally alleges violations of his Eighth Amendment rights at Maury C.I. on December 1, 2019. See Compl. [D.E. 1].

On February 22, 2021, the court conducted its initial review of the complaint pursuant to 28 U.S.C. § 1915A and allowed the action to proceed. Order [D.E. 10].

---

[1] Davis was dismissed from this action on July 1, 2022, for failure to effectuate service. July 1, 2022, Ord. [D.E. 48].

On April 23, 2021, waivers were returned executed as to Strickland, Hackney, and Nobles. [D.E. 14]. However, because the Department of Public Safety ("DPS") could not procure a waiver of service on its former employee, defendant Davis, the North Carolina Attorney General provided the court, under seal, Davis's last known address. See [D.E. 15].

On April 26, 2021, the court issued summons as to Davis. See [D.E. 16].

Pursuant to 28 U.S.C. § 1915(d), the United States Marshals Service attempted service on Davis by certified mail on April 30, 2021, with an answer due on May 21, 2021. See [D.E. 17].

On July 20, 2021, Strickland, Hackney, and Nobles answered the complaint. [D.E. 20].

On July 26, 2021, the court issued notice directing plaintiff to proceed after failure to answer as to defendant Davis. See [D.E. 21] (citing Fed. R. Civ. P. 55).

On July 27, 2021, Magistrate Judge Robert B. Jones, Jr. entered a scheduling order and appointed North Carolina Prisoner Legal Services, Inc., ("NCPLS") to assist plaintiff with discovery in this action. Order [D.E. 22].

On August 13, 2021, plaintiff moved for entry of default as to Davis. Mot. [D.E. 24].

On August 19, 2021, plaintiff moved for default judgment as to Davis. Mot. [D.E. 25].

On August 20, 2021, plaintiff filed what the court construed as a motion for leave to amend the complaint and a verified proposed amended complaint. See Am. Compl. [D.E. 26].

On October 29, 2021, the court: granted plaintiff's motion to amend; allowed the amended complaint to proceed; denied without prejudice the motion for entry of default; denied the motion for default judgment as premature; directed the U.S. Marshals Service, by November 15, 2021, to personally serve Davis at the address under seal; and warned plaintiff that, if personal service on Davis failed, the court had discharged its obligation under 28 U.S.C. § 1915(d). Order [D.E. 27].

On November 1, 2021, the court issued a text order staying deadlines.

On November 15, 2021, summons was returned unexecuted as to Davis. [D.E. 29].

On November 16, 2021, the court found service on Davis had failed, noted the court had fulfilled its obligation under 28 U.S.C. § 1915(d), and directed plaintiff to show good cause why Davis should not be dismissed without prejudice for plaintiff's failure to obtain service on Davis within 90 days as required by Federal Rule of Civil Procedure 4(m). Order [D.E. 30].

On November 24, 2021, plaintiff moved for entry of default as to Davis, Mot. [D.E. 31], and for default judgment as to Davis, Mot. [D.E. 32].

On December 6, 2021, the court dismissed without prejudice Davis as a defendant under Fed. R. Civ. P. 4(m), denied as moot plaintiff's motions for entry of default and default judgment, and referred the action to Judge Jones for entry of a new scheduling order. Order [D.E. 34].

On December 9, 2021, Judge Jones entered a new scheduling order. Order [D.E. 35].

On April 8, 2022, plaintiff informed the court that NCPLS had assisted with discovery, and provided legal advice, but would not provide further representation in the action. [D.E. 36].

On April 28, 2022, plaintiff moved for renewed service on Davis, Mot. [D.E. 37], and reconsideration of the December 6, 2021, order dismissing Davis as a defendant, Mot. [D.E. 38].

On May 9, 2022, Strickland, Hackney, and Nobles (collectively, "defendants") answered the amended complaint, see [D.E. 39], and moved for an extension of time to file dispositive motions, see Mot. [D.E. 40].

On May 11, 2022, Judge Jones granted the motion for an extension of time to file dispositive motions. Order [D.E. 41].

On May 12, 2022, the court granted plaintiff's motion for reconsideration, allowed plaintiff an extension of time until June 24, 2022, to serve Davis, directed the U.S. Marshals Service to serve Davis via certified mail, Order [D.E. 42], and re-issued summons as to Davis, see [D.E. 43].

On June 3, 2022, summons was returned unexecuted as to Davis. See [D.E. 44] (noting, in the remarks section, "package was returned on 5/31/2022 w/ 'return to sender'").

On June 6, 2022, the court: directed the U.S. Marshals Service to personally serve Davis within twenty-one days; reissued summons; and warned plaintiff that, if personal service failed, the court had discharged its obligation under 28 U.S.C. § 1915(d). Order [D.E. 45]; [D.E. 46].

On June 24, 2022, summons again was returned unexecuted as to Davis. See [D.E. 47].

On July 1, 2022, the court dismissed without prejudice Davis as a defendant under Fed. R. Civ. P. 4(m) and referred the action to Judge Jones for a new scheduling order. Order [D.E. 48].

On July 8, 2022, Judge Jones entered a new scheduling order. Order [D.E. 49].

On July 25, 2022, plaintiff moved for appointment of counsel. Mot. [D.E. 50].

On August 9, 2022, Judge Jones extended the deadline to file dispositive motions. Order [D.E. 52].

On September 20, 2022, plaintiff moved to reopen discovery. Mot. [D.E. 53].

On October 12, 2022, Judge Jones granted plaintiff's limited motion to reopen discovery and granted defendants an extension of time to file dispositive motions. Order [D.E. 55].

On October 13, 2022, the court denied the motion to appoint counsel. Order [D.E. 56].

On November 29, 2022, Judge Jones extended the motions deadline. Order [D.E. 60].

On January 5, 2023, plaintiff moved to compel discovery. Mot. [D.E. 61].

On January 13, 2023, Judge Jones extended the motions deadline. Order [D.E. 63].

4

On February 16, 2023, Judge Jones allowed the motion to compel and granted defendants motion for an extension of time until April 6, 2023, to file dispositive motions. Order [D.E. 66].

On April 6, 2023, defendants moved for summary judgment, Mot. [D.E. 68], and filed a memorandum in support [D.E. 69], a statement of material facts [D.E. 70], an appendix to the statement of material facts [D.E. 71], and a motion for leave to file video evidence [D.E. 72].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 73].

On April 7, 2023, the court granted defendants' motion for leave to manually file a video exhibit. Order [D.E. 74].

On April 14, 2023, the court granted plaintiff an extension of time until May 27, 2023, to file a response as to defendants' motion for summary judgment. Order [D.E. 76].

On May 10, 2023, plaintiff moved for a delay of the proceedings so that he could review the video evidence. Mot. [D.E. 79].

On May 11, 2023, the court granted in part plaintiff's motion seeking a delay of the proceedings, directed defendants to ensure plaintiff could review the video evidence by May 27, 2023, and to file notice not later than May 30, 2023, confirming that plaintiff had the opportunity to review this video evidence, and allowed plaintiff an extension of time until June 13, 2023, to file his response to defendants' motion for summary judgment. Order [D.E. 80].

On May 26, 2023, defendants responded to the court's order and attached a receipt where plaintiff acknowledged he had the opportunity to view the relevant video. See [D.E. 81, 81-1].

5

On June 6, 2023, plaintiff filed a verified response in opposition to defendants' motion for summary judgment, Pl.'s Verified Resp. [D.E. 82], together with a statement of material facts [D.E. 82-1], an appendix [D.E. 82-2], and various exhibits [D.E. 82-3].

Facts:

The facts of this case, viewed in the light most favorable to plaintiff, are summarized as follows. The incident at issue in this case took place on December 1, 2019, at approximately 9:00 a.m. within Maury Correctional Institution. Pl. Decl. [D.E. 82-3] ¶¶ 2–3; Defs.' Stmt. Mat. Facts. [D.E. 39] ¶1. Plaintiff entered formerly-named defendant Officer Davis's office, where Davis instructed plaintiff to return to his cell. Pl. Decl. [D.E. 82-3] ¶¶4–5; Defs.' Stmt. Mat. Facts. [D.E. 39] ¶¶4–5. A verbal altercation occurred. Pl. Decl. [D.E. 82-3]¶¶ 6–8; Defs.' Stmt. Mat. Facts. [D.E. 39] ¶¶6–8. Davis called for an additional correctional officer to aid in taking plaintiff to restrictive housing to "cool off." Pl. Decl. [D.E. 82-3] ¶¶9–11; Video [D.E. 71-1] 9:41:51 to 9:42:22; Defs.' Stmt. Mat. Facts. [D.E. 39] ¶8. Plaintiff was restrained with handcuffs with his hands behind his back during the transfer. Video [D.E. 71-1] 9:42:20 to 9:42:26. While descending the stairs, a physical altercation took place with Davis pushing plaintiff up against the control room window on a landing. Pl. Decl. [D.E. 82-3] ¶¶12–13; Video [D.E. 71-1] 9:42:20 to 9:42:26; Defs.' Stmt. Mat. Facts. [D.E. 39] ¶¶9–10. Davis then pushed plaintiff down a set of stairs. Pl. Decl. [D.E. 82-3] ¶¶12-13; Video [D.E. 71-1] 9:42:26 to 9:42:31. Davis was found to have violated policy and resigned that same day. Defs.' Stmt. Mat. Facts. [D.E. 39] ¶12.

No defendant was in position to protect plaintiff from the push down the stairs. Video [D.E. 71-1] 9:41:57 to 9:42:31. Defendant Strickland witnessed plaintiff's fall and assisted plaintiff to his feet. Pl. Decl. [D.E. 82-3] ¶¶13; Video [D.E. 71-1] 9:42:31 to 9:43:04; Strickland

6

Decl. [D.E. 71-9] ¶3. When Hackney arrived at the scene, he observed staff escorting plaintiff to restrictive housing. Pl. Decl. [D.E. 82-3] ¶¶13; Video [D.E. 71-1] 9:42:31 to 9:43:04; Hackney Decl. [D.E. 71-10] at ¶3. Plaintiff tried to stand but could not feel his legs, and his back was spasming. Pl. Decl. [D.E. 82-3] ¶14. He requested a wheelchair, but one was not provided. Id. ¶¶14–15; Video [D.E. 71-1] 9:43:04 to 9:43:41. Plaintiff tried to walk, but when he was unable to do so, defendant Strickland and Hackney and two other officers carried plaintiff. Pl. Decl. [D.E. 82-3] ¶¶17–18; Strickland Decl. [D.E. 71-9] at ¶3; Hackney Decl. [D.E. 71-10] at ¶3; see also Video [D.E. 71-1] 9:43:04 to 9:43:41 (noting video does not show plaintiff being carried).[2] Plaintiff was in pain and asked to be put down several times, but he was ignored. Pl. Decl. [D.E. 82-3] ¶¶17–18. Strickland at one point stated, "Quit crying like a bitch." Pl. Decl. [D.E. 82-3] ¶18.

Upon reaching a different unit, defendants took plaintiff into a staff bathroom and dropped him. Pl. Decl. [D.E. 82-3] ¶19; Def. Ex. C [D.E. 71-4] at 9; 25–26 (showing photos of plaintiff in a bathroom). Plaintiff was then beaten with fists and feet. Pl. Decl. [D.E. 82-3] ¶19. Plaintiff specifically saw defendant Nobles foot come down on his head and face area.[3] Id. Defendant Hackney then told the other correctional officer to stop the beating because plaintiff had not assaulted Davis as the officers appeared to believe. Pl. Decl. [D.E. 82-3] ¶20. Hackney then began filming with a handheld camera. Id.[4]

---

[2] The video footage ends at this point, and no further actions of plaintiff or defendants were captured.

[3] Defendant Nobles asserts, "[he] was not involved in this incident in any way"; he "did not use any force on" plaintiff; when shown a picture of plaintiff, Nobles did not recognize him; and that Nobles "did not cause [plaintiff] any harm or use any force on [plaintiff]." Nobles Decl. [D.E. 71-11] at ¶3.

[4] Defendants' declarations do not address the bathroom incident. See Strickland Decl., [D.E. 71-9]; Hackney Decl., [D.E. 71-10] at ¶3; Nobles Decl., [D.E. 71-11] at ¶3. Strickland states, "[Plaintiff] refused to walk, at which time officers utilized a four-man carry. Officer Strickland held Plaintiff's left torso. [Plaintiff] was screened by

7

Plaintiff was lifted off the floor, placed in a wheelchair, and taken to medical. Pl. Decl. [D.E. 82-3] ¶21; Strickland Decl. [D.E. 71-9] at ¶3 (noting plaintiff was taken to medical). After a visit with medical, plaintiff continued to have his hands restrained behind his back with handcuffs and was placed in a holding cell for several hours while in severe pain. Pl. Decl. [D.E. 82-3] ¶22. Eventually, plaintiff was placed in restrictive housing, and the handcuffs were removed. Pl. Decl. [D.E. 82-3] ¶22; Hackney Decl. [D.E. 71-10] at ¶3. Plaintiff's hands were restrained behind his back with handcuffs for the entirely of the alleged incident. Pl. Decl. [D.E. 82-3] ¶22; Video [D.E. 71-1] 9:41:52 to 9:43:30.

Plaintiff experienced back and knee pain, and his right wrist was dislocated causing deformation of his right thumb joint. Pl. Decl. [D.E. 82-3] ¶¶25–26; Defs.' Ex. D [D.E. 71-5] at 1; Defs.' Ex. E [D.E. 71-6] at 1.

### Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading,

---

medical and the Officer in Charge was notified." Strickland Decl., [D.E. 71-9] at ¶3. Hackney states, "[Plaintiff] was unable to walk due to him stating his knee was hurting. I placed my right hand on [plaintiff's] left ankle and assisted with a four man carry technique to carry the offender to restrictive housing. No further force was used." Hackney Decl., [D.E. 71-10] at ¶3. And as noted, Nobles states, "[he] was not involved in this incident in any way." Nobles Decl., [D.E. 71-11] at ¶3.

8

Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

Defendants argue, *inter alia*, that the plaintiff's version of events is contradicted by the video footage, defendant Noble was not involved, the escort of plaintiff was not a use of force event, the force used was not excessive because the use of force was necessary, the amount of force used was appropriate, plaintiff's injuries were minor, defendants reasonably perceived a threat from plaintiff, and defendants made efforts to temper the severity of the force used. Defs.' Mem. [D.E. 69] at 8–16. Defendants also argue they are entitled to qualified immunity, and plaintiff's official capacity claims are barred by the Eleventh Amendment. Id. at 16–19.

First, plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment unless the state has waived immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989). Because North Carolina has not waived immunity, defendants are entitled to summary judgment on his official capacity claims. See Anderson, 477 U.S. at 249.

The court next considers plaintiff's excessive force claims. To succeed in an Eighth Amendment excessive force claim, plaintiff must establish that "the officials act[ed] with a sufficiently culpable state of mind," and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992)

9

(quotations and alteration omitted). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted). "[T]he 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quotation omitted). Factors to determine whether an officer acted wantonly include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)). The "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason." Brooks, 924 F.3d at 113.

Contemporaneous medical records reflect that, right after the use-of-force incident, plaintiff was evaluated by medical for pain in his right knee and right hand. Defs.' Ex. D [D.E. 71-5] at 1. It was determined plaintiff dislocated his wrist causing deformation of his right thumb, and he experiences intermittent back pain. Defs.' Ex. E [D.E. 71-6] at 1–4. Further, plaintiff's verified statements note he was in "extreme pain in [his] back, wrists, and shoulders"; he was "transferred to an outside medical center where a cast was placed on [his] right arm and hand"; and he has pain from the back injury and require[s] extensive physical therapy on [his] right arm and hand." Pl. Decl. [D.E. 82-3] ¶¶24–26. Plaintiff's averment that defendant Strickland mocked plaintiff's pain indicates defendants Strickland and Hackney were aware plaintiff was in pain when they were carrying him. See Pl.'s Decl. [D.E. 82-3] ¶ 18.

10

The parties' disparate statements and declarations cannot be reconciled. For example, defendants' declarations make no mention of plaintiff being taken to a bathroom before being taken to medical or restrictive housing. However, plaintiff provides a detailed account of the bathroom incident, and photographs in the use-of-force incident report show plaintiff in a bathroom. Id. ¶¶19–20; Pl. Verified Resp. [D.E. 82] at 2; Def. Ex. C [D.E. 71-4] at 9; 25–26. Further, the video footage submitted by defendants does not show the carrying of plaintiff or the bathroom incident. See Video [D.E. 71-1] 9:41:51 to 9:43:41

After viewing the evidence and the inferences drawn therefrom in the light most favorable to plaintiff, Scott 550 U.S. at 378, issues of material fact presently preclude entry of summary judgment for defendants as to plaintiff's excessive force claims, Anderson, 477 U.S. at 247–48.

The court now turns to plaintiff's failure-to-intervene claim. This claim, essentially, alleges a theory of "bystander liability [which] . . . permits relief against an officer who (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." Brooks, 924 F.3d at 110 (citation omitted). Plaintiff has not shown defendants were able to prevent the throw down the stairs, but questions of material fact remain as to this failure-to-intervene claim with respect to the remaining alleged use-of-force incidents.

Further, although defendants contend that qualified immunity insulates them from suit, because there are genuine issues of material fact as to plaintiff's excessive force and failure to protect claims, the present record also precludes a qualified immunity finding on summary judgment. See Tolan v. Cotton, 572 U.S. 650, 655–66 (2014); Brooks, 924 F.3d at 119.

11

Conclusion:

For the reasons discussed above, defendants' motion for summary judgment [D.E. 68] is GRANTED IN PART and DENIED IN PART. Defendants' motion is granted as to plaintiff's official capacity claims. Defendants' motion is denied as to plaintiff's excessive force and failure to protect claims. The court REFERS the case to Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference. Judge Jones will notify the parties how he wishes to proceed concerning the settlement conference, and the date on which it will be held. The court also APPOINTS NCPLS for the limited purpose of assisting plaintiff in the court-hosted settlement conference. See Standing Order 21-SO-11 at ¶7. The court further DIRECTS the clerk to send a copy of this order to notify NCPLS of its appointment.

SO ORDERED, this 2d day of October, 2023.

RICHARD E. MYERS II
Chief United States District Judge